. IRISH VS. DEAN.

CONTRACTS: EVIDENCE. *(1, 2) Rights of parties under contract for sup-
plies, silent as to its duration. Parol evidence inadmissible to limit the
time. Reversal of judgment. (3) No reversal for error by which ap-
pellant was not injured.*

By contract under seal, A. covenanted with B. to sell and deliver to the lat-
ter, "milk and cream of good quality and in sufficient quantity for his
use in the hotel kept by him and known as the 'Park Hotel;' said milk
and cream to be daily furnished and delivered" at specified prices;
and B. covenanted to purchase of A., at said prices, "all the milk
and cream that he may use in the hotel kept by him, known as the
'Park Hotel,' and to pay for the same at the. end of each month, in full."
B. had a lease of said hotel for five years from the date of said contract.
A little more than a year from that date, he refused to receive any more
milk or cream from A., and thenceforth purchased those articles from
other persons for use in his said hotel. Upon A.'s claim for damages
for breach of such contract, *Held:*

1. That the contract being silent as to its duration, either party might
terminate it at pleasure upon reasonable notice; and parol evidence that
the contract was for a specific time, was inadmissible.

2. That, as no question of notice was made on the trial, the court
should have charged that when B. terminated the contract, he had a
legal right to do so.

3. That, although B.'s evidence of a contemporaneous oral agreement
that the contract should terminate in one year was improperly admitted,
still, as A. was not injured thereby, a verdict against him will not be
disturbed.

APPEAL from the Circuit Court for *Dane* County.

Action upon an account which the defendant admitted was
correct. The controversy arises upon a counterclaim in the
answer, in which it is alleged that on the 1st of August, 1871,
the defendant and one .Harvey T. Jewett were partners in the
farm and dairy business in Dane county, under the name and
style of H. T. Jewett & Co., and that before that time the
plaintiff had leased the "Park Hotel" in Madison, for five
years from August 15th, 1871, and, when the contract herein-

after mentioned was made, was engaged in making preparations for opening such hotel for the accommodation of the public.   The counterclaim then proceeds as follows :

" And for the purpose of making provisions to supply himself, in the conduct and management of said hotel business, with milk and cream during the time - for which he had so leased the said building and appurtenances, and with the mutual agreement and understanding that the contract hereinafter set forth should be for the period of time for which he had so leased the same, unless the said plaintiff should himself sooner withdraw from the business of conducting said hotel, the said plaintiff on the one part, and the said Jewett and this defendant on the other part, as such partners, and by their said firm name, made and mutually executed, under their hands and seals, and delivered, a written agreement, of which the following is a copy, to wit:

" ' This agreement, made this first day of August, 1871, by and between H. T. Jewett & Co., of Dane county, Wisconsin, party of the first part, and *Mark H. Irish*, of the city of Madison, Wisconsin, party of the second part, witnesseth:

" ' That the said party of the first part, for and in consideration of the covenants and agreements of the party of the second part, to be hereinafter specified, doth hereby promise and agree to sell and deliver to said party of the second part, milk and cream of good quality and in sufficient quantity for his use in the hotel kept by him, and known as the Park Hotel; said milk and cream to be daily furnished and delivered at the following prices, viz: milk at six (6) cents per quart, and cream at twenty (20) cents per quart.

" ' And the said *Mark H. Irish*, party of the second part, for and in consideration of the covenants and agreements herein contained to be kept and performed by the said party of the first part, hereby covenants and agrees to purchase of said H. T. Jewett & Co. all the milk and cream, at the prices hereinbefore named, that he may use in the hotel kept by him,

known as the Park Hotel, and to pay for the same at the end of each month, in full.

. " ' Witness our hands and seals the day and year first above written.              " ' H. T. JEWETT & Co.  [*Seal.*]
                      " ' M. H. IRISH.              [*Seal.*] ' "

It is then alleged that Jewett & Co. purchased additional stock and incurred other large outlays in adding to their facilities for performing such contract, and did perform it fully from August 23d, 1871 (when the hotel was first opened for guests), until September 2d, 1872, on which last mentioned day the plaintiff refused to purchase or receive any more milk or cream from Jewett & Co., although they were ready and willing and offered to furnish the same, but the plaintiff procured milk and cream elsewhere for use in his hotel. An assignment of the contract, and all rights under it, to the defendant, before this action was commenced, is duly averred, and the counterclaim is for damages resulting from the alleged breach of the contract by the plaintiff. The quantity of milk and cream furnished under the contract is stated as a basis for ascertaining such damages.

The plaintiff interposed a reply to such counterclaim, in which, after denying that the contract was to remain in force more than one year, he alleged certain reasons, not material to the questions considered by the court, why he refused to receive milk and cream under the contract after the expiration of the year.

On the trial, parol evidence was received on behalf of the defendant, showing the leasing of the Park Hotel by the plaintiff, as alleged in the counterclaim, and that when the contract in controversy was made, the defendant knew the terms of the lease. Parol evidence was also received, against the objection of the defendant, tending to show that the parties agreed that the contract should terminate in one year. After such objection was overruled, the defendant gave testimony tending to prove that the contract was to continue while

the plaintiff should keep the hotel. All the foregoing evidence was submitted to the jury, who found specially that the contract was for one year. The defendant was, therefore, defeated on his counterclaim, and the plaintiff had verdict and judgment for the amount admitted to be due on his account. From this judgment the defendant appealed.

*Wm. F. Vilas*, for appellant, contended, 1. That the court should have construed the written contract, without reference to any earlier or contemporaneous agreement not incorporated therein. 2 Parsons on Con. (5th ed.), part II, ch. 1, sec. 10, p. 548. 2. That this contract ought not to be construed as an idle document, silent as to time, and terminable at the caprice of either party. A contract is to be so construed "*ut res magis valeat quam pereat.*" *Brown v. Batchelor*, 1 H. & N., 255; *Mare v. Charles*, 5 E. & B., 978. "For the same reason, all parts of the contract will be construed in such a way as to give force and validity to all of them, and to all the language used, where that is possible." 2 Parsons on Con., part II, ch. 1, sec. 3, p. 505; *Goix v. Low*, 1 Johns. Cas., 343. Again, the presumption in respect to the use of words is in favor of the comprehensive over the restrictive, the general over the particular sense. 2 Parsons on Con., p. 501. The situation of the parties at the time with respect to the subject of the contract, the surrounding circumstances, and the manifest object and purposes to be subserved by it, as derived therefrom, are also confessedly admissible to aid in arriving at the sense in which the words of the contract were employed. Reading this contract in the light of the fact that the plaintiff, when he entered into it, was engaged in making arrangements to supply the "Park Hotel," then recently leased by him for five years, counsel contended that it could only be construed to mean, that the plaintiff was to receive from the other party to the contract all the milk and cream that he might use in such hotel; and that the obligation of the contract would therefore continue so long, and only so long, as plaintiff

should desire such supplies, as the landlord of the said hotel; that proof of the fact that he was lessee for a limited time, should be resorted to chiefly for the purpose of limiting the obligation to that time as its utmost; but that the language of the contract would terminate its obligation, should the plaintiff sooner assign or surrender the lease or discontinue business.

*S. U. Pinney*, for respondent:

1. Where the writing is *silent* on a subject upon which the parties have actually agreed as part of their contract, parol evidence is admissible to show what the agreement was in that respect; the agreement in such case being in part a written, and in part an oral one. 2 Parsons on Con., 553; *Jeffery v. Walton*, 1 Starkie, 267; *Ballston Spa Bank v. Marine Bank*, 16 Wis., 120, 136. When a contract does not depend solely upon written documents, the question as to what such contract was, is for the jury. 1 Chitty on Con., 102; *Moore v. Garwood*, 4 Exch., 681, 690; *Edwards v. Goldsmith*, 16 Pa. St., 43; *Bomeisler v. Dobson*, 5 Whart., 398. 2. The writing here is entirely silent as to the time during which it should be in force. The engagement of *Irish* to "pay for all the milk and cream that he may use" in the hotel, refers to the engagement of the other party to sell and deliver, and does not bind him to receive and pay except so far as they have bound themselves to deliver (1 Chitty on Con., 122, 117, and cases cited in note); and their engagement extended only to daily delivery, good quality and sufficient quantity; the object of the parties being to covenant for a *full supply and good quality so long as it was delivered*, and that neither party should have to look elsewhere, the one to get an adequate supply, or the other to market that quantity. If the contract contains any provision as to its duration, it is that it shall continue as long as the plaintiff shall keep the hotel, whether as lessee or owner. If such a provision exists in the contract, parol evidence, to show that it was to con-

tinue only as long as he should keep as lessee, or, at most, no more than five years, could not be received to affect the contract. It could only be admitted upon the theory that the contract is, as we contend, entirely silent as to the period of its duration. 3. The written contract did not contain any reference to the lease from the Park Hotel company to the plaintiff. Other contemporaneous. agreements between the same parties, in relation to the same subject matter, in whole or in part, might be referred to as part of the agreement, or to construe it. So, reference might be had to writings not contemporaneous, and not between the same parties, *if the agreement itself made such reference ;* otherwise not. *Posey v. Rice*, 29 Wis., 93; *Hutchinson v. R'y Co.*, 37 id., 582, 608.

LYON, J. We think the circuit court erred in admitting testimony *aliunde* the written contract, to show the time the parties agreed the contract should remain in force. That must be ascertained and determined by the court from the contract itself, without resort to extraneous evidence; and the jury had no concern with the question. This is not the case of latent ambiguity in a written contract, which may be explained by parol; neither is it a case in which the parties have reduced to writing a part of their contract only, leaving the residue thereof in parol. On the contrary, in this case the parties have reduced the whole of their contract to writing, and the instrument seems free from ambiguity. There is no more difficulty in determining, from the instrument itself, how long the contract might continue, and when and how it might be terminated, than there is in determining when a promissory note becomes due which specifies no day of payment, or how a written contract to render and pay for daily or weekly services, but which is silent as to duration, may be terminated. In the one case it would be held that the note was due immediately, and parol testimony would not be received to show the contrary. *Thompson v. Ketcham*, 8 Johns.,

190. In the other case, it would, doubtless, be held, that the contract is terminable by either party at pleasure, and parol proof would not be received of an agreement that the services should be continued to a specific time. The most that could be required of the party seeking to terminate the contract, would be reasonable notice thereof to the other party.

The true rule, we think, is this: In a contract for personal services, or for the sale of personal property to be delivered from time to time, if the contract is silent as to its duration, either party may terminate it at pleasure by giving reasonable notice to the other party of his intention to terminate it. The present case comes within this rule, and the circuit court should have excluded the proofs *aliunde* the written contract, which tended to show that the contract, although silent as to duration, was yet for a specific time. Such proofs changed the terms of the contract just as certainly as though it had been expressly written therein that either party to it might terminate it at his option. Inasmuch as no question of reasonable notice was made on the trial, the circuit court should have held that when the plaintiff terminated the contract, he had a legal right to do so, and could not be required to respond in damages therefor.

It follows that the defendant was not injured by any errors committed on the trial, and hence, that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.