ROBSON *v.* MISSISSIPPI RIVER LOGGING CO.

*(Circuit Court, N. D. Iowa, E. D.   September 22, 1890.)*

1. CONTRACT—INTERPRETATION—DURATION.
   Plaintiff and defendant entered into a contract which, after reciting that plaintiff owned a large quantity of pine land tributary to certain rivers, and then had a large quantity of logs and timber in said streams, and expected to cut annually thereafter, and deliver in said streams, a large quantity of logs and timber to be driven to market down said streams, and that defendant was engaged in driving logs down said streams, and that differences had arisen between the parties in respect to the driving of logs, provided that, "therefore, for the purpose of settling all said differences, and providing for the future, it is mutually agreed" that defendant shall, for a certain consideration to be paid at the end of each season's business, take possession and control of all logs and timber, not exceeding a certain amount per year, which plaintiff shall deliver in said streams, and shall drive and deliver them at a certain point. Ever since the organization of defendant corporation it had driven and cared for plaintiff's logs. The differences referred to in the contract and over which litigation was pending were chiefly in regard to compensation. Said streams were the only means by which plaintiff's logs could be got to market, and defendant either directly or by its control over other companies managed all the facilities on said streams for getting logs to market. *Held,* that the contract was not revocable at pleasure, since, as applied to its subject-matter, it showed that it was to remain in force until all the logs on the lands then owned by plaintiff had been cut and delivered in said rivers.

2. SAME—CONSIDERATION.
   Even if said contract does not bind plaintiff to deliver any logs to defendant to be driven, it is not therefore void for want of consideration, as, if any logs are delivered, plaintiff is bound by the contract to pay for driving them, and defendant is not bound to do anything until they are delivered.

3. SAME.
   As the execution of the contract settled the litigation then pending between the parties, this was a valuable executed consideration for entering into the contract.

At Law.   On demurrer to petition.

Action by John Robson against the Mississippi River Logging Company to recover damages for breach of written contract regarding driving and delivery of logs.

*J. M. Gilman, J. A. Tawney,* and *Henderson, Hurd, Daniels & Kiesel,* for plaintiff.

*E. S. Bailey* and *Young & Young,* for defendant.

Shiras, J. In the petition filed in this cause it is averred that plaintiff has for many years past been engaged in the lumber and logging business on the Chippewa and Flambeau rivers, in the state of Wisconsin; that he still is the owner of large quantities of pine timber upon said rivers, and expects to continue in such logging business, not only until the pine lumber upon the lands now owned by him is marketed, but so long as there is to be found, tributary to said streams, timber that can be purchased and put into the market; that the defendant is a corporation created under the laws of the state of Iowa, but since its organization, in 1871, it has been engaged in the business of driving and running for hire saw-logs and timber down the Chippewa and Flambeau rivers, into the boom at Beef slough, near the mouth of the Chippewa river, and there brailing the same ready for transportation down the Mississippi river, and delivering them for that purpose to the owners thereof, when turned out of said boom at Beef slough, which said boom was owned and operated by a corporation known as "the Beef Slough Manufacturing, Booming, Log-Driving & Transportation Company," but which last-named company was largely composed of the members of the defendant company, and its business was practically under the control and management of the defendant; that from the date of the organization of the defendant company, in 1871, up to the year 1882, the plaintiff has yearly cut large quantities of logs and timber upon said Chippewa and Flambeau rivers, all of which were delivered to the defendant company to be driven and cared for by it, while the same were being taken to the Beef Slough boom, to be there prepared for transportation down the Mississippi river; that in the year 1882, certain differences and disputes touching said business had arisen between the plaintiff and defendant, and litigation over the same was pending in the courts, when the parties, for the purpose of ending such litigation, and settling such past differences, and providing in respect to the driving, brailing, booming, scaling, and delivering plaintiff's logs in the future, entered into an agreement in writing, as follows:

"Articles of agreement made and entered into this 23d day of August, 1882, by and between the Mississippi River Logging Company, a corporation organized under the laws of Iowa, party of the first part, and John Robson, party of the second part, witnesseth: Whereas, the party of the second part owns a large quantity of pine lands tributary to the Chippewa and Flambeau rivers and their branches in Wisconsin, and now has a large quantity of saw-logs and timber in said streams, and expects to cut annually hereafter, and deliver in said streams, a large quantity of saw-logs and timber to be driven to market down said streams to the Mississippi river; and whereas, the said party of the first part is engaged in the business of driving logs down said streams to Beef slough for other parties; and whereas, differences having arisen between said parties hereto, and between the party of the second part and the Chippewa Lumber & Boom Company, (which is controlled by the party of the first part,) in respect to the running and driving of logs: Now, therefore, for the purpose of settling all said differences and providing for the future, it is mutually agreed as follows: *First.* Said party of the first part, in consideration of the premises and of the promises of the said party of the second part hereinafter mentioned, agrees to take possession and control of

all logs and timber which the party of the second part shall deliver in said Chippewa river, below the east and west forks thereof, and all that shall be delivered in said Flambeau river, at or below the north and south forks of said stream, and to drive the same at its own cost, charges, and expense down said streams to and into Beef Slough boom, not exceeding an average of twenty-five millions of feet annually, said logs to be driven each season with all reasonable dispatch, and with as much care and facility as it shall drive its own logs. The logs of the party of the second part now in said streams are to be driven by said first party under this agreement. Any charges to be paid the Chippewa Lumber & Boom Company, or any other company, person, or persons, on account of said logs, or any of the same, between the aforesaid forks of said streams and said Beef Slough boom are to be paid by the said party of the first part. *Second.* And the said party of the first part, in consideration of the premises, further undertakes and agrees that the charges of the said Beef Slough Boom Company shall not exceed sixty cents per thousand feet for booming, assorting, and delivering in pockets, and watching the said logs of the said party of the second part at all the mills on the Chippewa river. *Third.* And the party of the first part, in consideration of the premises, further undertakes and agrees to brail and deliver to the said second party, in a proper and usual manner, his said logs, ready to be taken in tow by boat after the same are turned out into pockets by said Beef Slough Boom Company, and to do the same with all reasonable dispatch. *Fourth.* And the said party of the second part, in consideration of the premises, promises and agrees to pay to the said first party annually, at the close of each season's business, for taking the care, control, and delivering said logs into Beef Slough boom as agreed, as aforesaid, the sum of two hundred and fifty dollars, and for brailing and delivering said logs ready for the tow-boat twenty-five cents per thousand feet. And said party of the second part also further agrees to return to the said party of the first part the brailing lines used in brailing said logs, unless the same shall have been three times used. *Fifth.* In case the said party of the second part associates any person or persons with him as partner or partners in such lumbering business this agreement is to stand, apply, and operate in respect to such partnership. But no logs are to be handled by said party of the first part under this agreement, except such as shall be owned by said party of the second part, or by him and others as partners. The cost of scaling the said logs as the same are turned into said Beef Slough boom is to be paid equally by the parties hereto.

"Witness our hands and seals this 23d day of August, 1882.

"MISSISSIPPI RIVER LOGGING CO.
"F. WYERHAUSER, Pt.
"JOHN ROBSON."

It is further averred in said petition that from the date of said contract down to the spring of 1889, all of the logs belonging to plaintiff delivered into said Chippewa and Flambeau rivers were driven and cared for by the defendant under the terms of said contract, and said work and services were paid for by plaintiff in strict accordance with the terms of such contract; that however, in the spring of 1889, the defendant, without cause or reason therefor, notified plaintiff that it would no longer drive, care for, and brail his logs under the terms of said agreement, and would no longer abide by and perform the same; that during the winter season of 1888–89, plaintiff had cut and put into the said Chippewa and Flambeau rivers, to be driven down the same to said Beef slough, some 14,840,136 feet of logs and timber, which defendant refused to drive

and care for under said agreement, and plaintiff was forced and compelled to employ other agencies in order to drive said logs; that the only other company engaged in such business is a corporation known as the "Chippewa Logging Company," which is owned, controlled, and operated by the same parties that form the defendant company, and plaintiff was compelled to employ the Chippewa company to do the work at an increased price; that in addition to the logs already cut plaintiff owns at least 60,000,000 feet of saw-logs and timber, tributary to said Chippewa and Flambeau rivers, which he desires and intends to cut, and which can only find a market by being driven down said streams into the Beef Slough boom; that on said streams there is a large quantity of timber land for sale, and a large quantity of logs and timber are sold each season; that plaintiff has heretofore, and in the ordinary course of business will hereafter, purchase logs and timber on said streams, in addition to those cut upon his own land, which must be driven down said streams to said Beef slough, and which it is and will be the duty of defendant under said agreement to drive and care for as therein provided; that in consequence of the refusal of defendant to carry out said agreement, plaintiff will be compelled in the future, as he was in 1889, to pay, for driving and caring for his logs, a sum much larger than that named in said written contract, to the damage of plaintiff in the sum of $75,000.   To this petition a demurrer is interposed on the grounds: (1) That it appears from said petition that the contract set out therein is silent as to the time during which it should remain in force, and the defendant had therefore the right to terminate it at its pleasure, or upon giving reasonable notice; (2) that the contract is void for want of mutuality, in that the plaintiff does not therein agree to deliver any logs or timber to defendant to be driven under said contract.

In support of the first ground of demurrer, the contention is that, where a contract is silent as to its duration, it may be terminated at the pleasure of either party, upon giving reasonable notice of the intent to terminate the same.   Counsel cite in their brief a large list of cases as authorities supporting this proposition.   Upon examination it appears that the majority thereof are instances of persons engaging in the employ of another, thus creating the ordinary relation of master and servant, or principal and agent, and, as to contracts of this nature, the rule is that—

"Unless there is a definite time fixed, no action can be maintained for the breach of a contract to hire a person at stipulated daily wages.   Such a contract is determined at the pleasure of either party, and no cause therefor need be alleged or proved.   It is only when a definite term is fixed that the parties are liable for a breach of the contract, except where there is an actual legal excuse."   Wood, Mast. & Serv. 265.

In Mechem on Agency, § 210, it is said:

"Where no express or implied agreement exists that the agent shall be retained for a definite time, the power and the right of revocation coincide. Such employments are deemed to be at will merely, and may therefore be terminated at any time by either party, without violating contract obligations, or incurring liability.   The law presumes that all general employments are

thus at will merely, and the burden of proving an employment for a definite period rests upon him who alleges it."

Of the cases cited by counsel for defendant, *Wilder* v. *U. S.*, 5 Ct. Cl. 462; *Irish* v. *Dean*, 39 Wis. 562; and *Coffin* v. *Landis*, 46 Pa. St. 430, are specially relied upon as furnishing the rule to be applied to the construction of the contract declared on. *Wilder* v. *U. S.* is a case wherein a contractor, in 1861, agreed to furnish transportation for all public stores sent from St. Paul to Fort Abercrombie, at a certain rate named in the contract, which, however, specified no period of duration. In July, 1863, the contractor refused to longer carry the stores, and thereupon a parol contract was entered into between the contractor and the quartermaster by which it was agreed that the contractor should carry the stores at a higher rate of compensation. The contractor did so, and the court of claims held that he could recover upon the parol contract. In *Irish* v. *Dean*, *supra*, the facts were that a written contract was entered into whereby H. T. Jewett & Co. agreed to sell to Mark H. Irish milk and cream in sufficient quantity for his use in the hotel kept by said Irish, and known as the "Park Hotel," at certain prices specified in the contract, nothing being contained in the agreement which fixed the time it was to continue in force. The supreme court of Wisconsin held:

"The true rule, we think, is this: In a contract for personal services or for the sale of personal property to be delivered from time to time, if the contract is silent as to its duration, either party may terminate it at pleasure by giving reasonable notice to the other party of his intention to terminate it."

In *Coffin* v. *Landis*, *supra*, is found another case of personal hiring, wherein the one party agreed to devote his entire time and energy to making sales of land for the other party, his remuneration to consist in one-half of the net profits realized from sales made by him, and the contract being silent as to its duration; the court held that "the plaintiff undertook not a continuous employment, but an agency to sell land. Such contracts are generally revocable at pleasure, unless the power to revoke is restrained by express stipulation, or unless given for a valuable consideration." Construing the language of these opinions with reference to the contracts involved in each case, the rule deducible therefrom is that, when a contract is silent as to the matter of its duration, then it is ordinarily terminable at pleasure of either party, reasonable notice being given to the other party. When there is nothing in a contract, when applied to its subject-matter, which either directly or by fair implication can be construed to fix a limit to its duration, then the law infers that the parties intended that such a contract is terminable at the option of either party, reasonable notice of the exercise of such option being required, when such notice is needed for the protection of the other party to the contract. Before, however, this rule for determining the duration of a contract can be applied, it must appear that the contract is silent upon the subject, or, in other words, if the contract fairly construed gives any other means of determining its duration, then the contract is not silent on the subject, and the rule of revocation at pleasure is not appli-

cable. The real intent and agreement of the parties on the matter of duration, as the same is made to appear by the contract, is to be enforced just the same as the other provisions thereof, so that on this point, as upon all others, we look to the contract in all its parts and entirety, as the evidence of the intent of the parties. It is a fundamental and well-recognized rule that in construing contracts, courts may look not only to the specific language employed, but also to the subject-matter contracted about, the relation of the parties thereto, the circumstances surrounding the transaction, or, in other words, may place themselves in the same position that the parties occupied when the contract was entered into, and view the terms of the agreement in the same light in which the parties did when the same were formulated and accepted. *U. S.* v. *Peck,* 102 U. S. 64; *Merriam* v. *U. S.,* 107 U. S. 437, 2 Sup. Ct. Rep. 536; *Canal Co.* v. *Hill,* 15 Wall. 94.

Especially is this true when the written contract itself, by way of inducement, refers to the situation of the parties touching the subject-matter of the contract, as the same existed at and prior to the date of the contract. From the averments of fact in the petition contained, and the recitals of the written contract declared on, it appears that the plaintiff had for many years been engaged in the lumber business, on the Chippewa and Flambeau rivers, in the state of Wisconsin, and that at the date of the contract he owned a large quantity of timber land tributary to the named rivers, and that he proposed to continue in said lumber business upon said rivers, and to cut and take to market the timber upon the lands owned by him, as well as such other timber and logs as he might from time to time purchase in that vicinity. It also appears that to market such timber plaintiff would be of necessity compelled to rely upon the Flambeau and Chippewa rivers, and the facilities connected therewith, as the means for reaching a market. It also appears that the defendant corporation was engaged in the business of driving logs down said streams for the owners thereof, and preparing them for further transportation down the Mississippi river, receiving compensation therefor; that the Chippewa Lumber & Boom Company was likewise engaged in the same business, being a corporation under the same control and management as the defendant company, and that the Beef Slough Company, likewise, under the management and control of the defendant, controlled the boom at Beef slough; that, in effect, the defendant directly and by means of its power of control over the Chippewa and Beef Slough Boom Companies, managed all the facilities found upon said Chippewa and Flambeau rivers, for the driving, booming, taking care of, and brailing logs and lumber sent down said streams; that from the date of the organization of the defendant company, it had received, driven, and cared for all logs and lumber forwarded to market by plaintiff; that in 1882 differences had arisen between the parties in carrying on the business named, which had resulted in litigation in the courts, and that, for the purpose of settling this litigation over the past affairs, and providing for the future carrying on of the business in question, the written contract of August 23, 1882, was entered into. This contract binds the

defendant to take possession and control of all logs and timber, which the plaintiff should deliver annually on each of the rivers named, below certain specific points, and to drive the same and pay all the costs and charges made by the Chippewa Lumber Co., and to brail the same in at Beef slough ready for further transportation down the Mississippi. Can it be fairly inferred that the parties, in view of the facts surrounding them, intended that this contract should only continue in force at the mere pleasure of either party? The main bone of contention was the compensation to be paid by the plaintiff for the services in driving, caring for, and delivering the logs. The recitals in the contract show that it was mutually understood that plaintiff expected in the future to cut and market the timber owned by him on the streams named in the contract, which could only be effected through the co-operation of the defendant, and the other companies controlled by it. Can there be any question that the logs and timber that the defendant agreed to take possession of, when placed in the named rivers, and to drive and care for, was the timber which the plaintiff would in the future, as in the past, cut and place in the Chippewa and Flambeau rivers, with the limitation found in the contract that the annual amount should not exceed an average of 25,-000,000 feet? One of the main purposes of the contract was to settle for the future the compensation to be paid for the work done in driving and caring for the logs marketed by the plaintiff. Is it possible that the parties intended to make a contract which could be terminated by either party at any time, as is the present contention of defendant? Such contract would not go far "in providing for the future," which is declared to be, in connection with the settlement of the past differences, the purpose of the written contract. The provision in regard to the annual payments and other matters clearly show that it was the contemplation of the parties that the contract would be in force for years. Still it is true that if the contract, as applied to its subject-matter, furnishes no rule for determining its possible duration, it must be held to be terminable at will, upon due notice, and the fact that it appears that it was the expectation of the parties that it would be in force for years does not prevent this rule from governing the case. The fact, however, that the provisions clearly indicate that it was the expectation of the parties that the contract would be in force for years may have weight upon the question whether there cannot be found in the contract and its subject-matter a limitation upon its duration, thus taking the contract out of the class that is held to be terminable at will. The duration of a contract may be made dependent upon the expiration of a period of time, or upon the completion of a given undertaking, or the happening of some event, all of which in turn may be certain or uncertain as to the date when the undertaking may be completed, or the event may happen. This uncertainty, however, does not render the contract terminable at will. Thus contracts for driving all the logs that might be cut and placed in the stream by a given date, or for driving 1,000,000 feet of logs as soon as it could be reasonably done, or for driving all the logs that could be cut from a given quantity of land, would each, by their terms, point

out the event which fixed the duration of the contract. In the contract declared on the exact number of acres of land owned by plaintiff is not named, but it was a matter easily ascertainable. In legal effect it does refer to a fixed quantity of land, to-wit, that owned by plaintiff at the date of the contract, and the undertaking of the defendant was that it would take possession of, drive, care for, and deliver the logs cut from the premises owned by plaintiff. The recitals and terms of the contract clearly show that it was the main purpose of the contract to fix the rates or compensation to be paid by plaintiff for the driving, caring for, and delivery of the logs cut by him upon the land owned by him, and it is equally clear that the rates agreed upon were intended to apply to all logs cut by plaintiff upon the lands owned by him, and delivered in the Chippewa and Flambeau rivers named in the contract. Thus the contract, as applied to its subject-matter, furnishes the means for determining its duration, and it not being silent therefore upon this point, the rule of revocation at will is not applicable.

On behalf of plaintiff, it has been forcibly urged that, in view of the peculiar control exercised by defendant over the facilities found upon the Chippewa and Flambeau rivers for the driving, taking care of, and booming logs upon those streams, and the resulting interdependence of the branches of business carried on by the respective parties, the contract should be construed to be in force so long as plaintiff should continue in the lumber business upon the named rivers. In passing upon the demurrer, it is not necessary to consider this view of the contract, as the real question presented by the demurrer is whether the contract is terminable at will, and if in any view it is not so terminable the demurrer cannot be sustained.

The second ground of demurrer, to the effect that the contract is void for want of mutuality, is clearly not well taken. Even if it be true, as claimed by defendant, that the contract does not bind the plaintiff to deliver any logs to the defendant to be driven, that does not render it void for want of consideration. The defendant is not bound to drive any logs, unless they are delivered, but if, being delivered to defendant, the same are driven, then the contract binds the plaintiff to pay the agreed price therefor, and the fact of performance on the part of defendant renders binding the obligation to pay on part of plaintiff. The execution of the contract between the parties settled the litigation then pending between them, thus showing a valuable executed consideration received by defendant as well as the plaintiff, for entering into the contract, which cannot be held to be void for want of consideration.

The point made, that the defendant is bound to drive and care for the logs, but that plaintiff is not bound to deliver the same to defendant to be driven, and therefore there is a want of mutuality, is not well founded in point of fact. It is clear that defendant is not bound to drive or care for any logs, until the same are delivered to it by plaintiff; and the latter is just as much bound to deliver as the former is to drive and care for. The obligation of defendant does not take effect until plaintiff delivers the logs, and the moment the defendant undertakes the care of

the logs, then the plaintiff becomes bound to pay the stipulated price, and thus it is clear that both parties are mutually bound in such sense that the contract cannot be held void for want of consideration. The demurrer is overruled, with leave to defendant to answer in 30 days.