CITY OF SUPERIOR, Appellant, vs. DOUGLAS COUNTY TELE-PHONE COMPANY and others, Respondents.

*September 17, 1909—February 1, 1910.*

*Contract with city for telephone service: Validity: Proposal and acceptance: Consideration: Discrimination in rates: Public policy: Subsequent legislation affecting obligation of contracts: Railroad Commission: Action attacking order: Joinder of causes and of parties: Demurrer.*

1. Where, before the enactment of ch. 499, Laws of 1907, a telephone company, in order to afford its patrons connection with the departments of the city government, offered to install and maintain telephones free of charge in such departments, and the common council accepted such offer, granting leave to the company to install its telephones in specified offices upon condition that the service should be first-class at all times and be continued so long as the company should operate a telephone system in the city, and the company accepted such conditions by installing the telephones as specified, a valid contract based upon sufficient consideration resulted.

2. No written acceptance by the company of the privilege so granted was necessary to create a contract.

3. Such a contract, if valid when made, is not affected by subsequent legislation prohibiting discriminatory rates, but is protected by the constitutional provision against impairing the obligation of contracts.

4. At common law a public-service corporation may for special reasons make a different rate to one person than to another, or accept payment from one in money and from another in services or some reasonable equivalent,—only *unjust* discriminations being condemned.

5. In a contract between a public-service corporation and a city, advantage given to the city over other patrons inures to the benefit of the public and does not, at common law, render the contract unenforceable.

6. A contract by which a telephone company, in return for the privilege of placing telephones in the city departments, agreed to maintain such telephones free of charge so long as it continued to operate a telephone system in the city, was not so uncertain or indefinite as to its duration, or so unreasonable in that respect, as not to be enforceable according to its terms. MARSHALL, J., doubts.

7. The special statutory action provided for in sec. 1797m—64, Stats. (Laws of 1907, ch. 499), to vacate an order of the Railroad Commission alleged to be invalid, cannot be joined with another action of primary import against another party to prevent the latter from complying with such order. MARSHALL, J., *dissenting*, is of the opinion that the two causes of action may be joined; that both the Railroad Commission and the public-service corporation to which the order in question is directed are necessary parties to the litigation. BARNES, J., is of the opinion that the Commission is a proper party to the action against such corporation.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed in part; affirmed in part.*

Action to enjoin defendant telephone company from discontinuing maintenance of telephones in plaintiff's city and public library buildings under the agreement to do so free of charge to it pursuant to which they were placed therein, and nullify action of the State Railroad Commission requiring such discontinuance.

The complaint is to this effect: About May, 1904, plaintiff and defendant telephone company made an agreement whereby the former extended to the latter the privilege of placing one telephone in each of eleven of the former's departments in its city building and one in its public library building, and promised to maintain the same so as to afford telephone communication between the company's patrons and such public officers, making all changes in such buildings necessary to the proper installation, and continue the facilities for telephone communication thus created during the life of the agreement, and, in consideration of such privilege and the advantage to such company thus created of making its service more desirable to existing patrons and so of retaining their patronage and gaining new customers upon the faith of such increased scope of service, it agreed to accept the privilege as granted with the condition affixed thereto that telephone service should be first class at all times and be continued so long as the company should maintain and operate a telephone system in the city. The company duly performed by installing and maintaining the telephones, and full performance on both sides was continued down to the commencement of this action, when such performance, on the part of the company, was about to be interrupted, and could only be prevented by judicial intervention, because, October 14, 1908, defendant Railroad Commission, basing its action on the law of 1907 creating such Commission, ordered the company, in disregard of its agreement, which was in full force at the time such legislation took effect, to discontinue performance. The company, pursuant to such order, notified plaintiff that it would cease performance of its agreement after November 10, 1908. The agreement contemplated substantial benefits to the telephone company as consideration for performance of its obligation, which benefits have in fact been enjoyed, while some injury has been caused to plaintiff's property by reason of changes in its buildings necessarily made in the course of installing

the telephones, and some benefit has accrued to the public. The discontinuance of the telephone service and removal of the telephones will inflict a substantial injury to plaintiff by reason of consequent necessary repairs. Appropriate relief was prayed for. A motion on behalf of the plaintiff for a temporary injunction was denied. The Railroad Commission demurred to the complaint for insufficiency and the same was sustained. Both determinations were closed by a single order from which this appeal was taken.

For the appellant there was a brief by *Thos. E. Lyons* and *T. L. McIntosh,* and oral argument by *Mr. Lyons.*

For the respondent *Douglas County Telephone Company* there was a brief by *Miller, Mack & Fairchild,* and oral argument by *E. S. Mack.*

For the respondents constituting the *Railroad Commission* there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

The following opinion was filed October 5, 1909:

MARSHALL, J. The arguments of counsel cover a very wide range as to whether the transactions detailed in the statement show that a contract was made between appellant and respondent telephone company. On that branch, waiving the matter of public policy, such purely elementary principles are involved that it is not thought best to follow the intricacies of the arguments with which the court has been favored. What constitutes a contract, in the general sense, is too familiar to require discussion. If there was an offer on one side to render a service to the other within the competency of that other to receive for the use of its officers in the conduct of the public business or the convenience of the public, in exchange for a privilege of value within the competency of such other to grant and which was granted in such exchange, subject to legitimate conditions which were accepted, there is hardly room for argument but that a valid contract was made.

No pecuniary liability on the part of the city was contemplated in the transaction. Therefore, it is useless to consider appellant's charter provisions respecting the manner of making contracts in that field.

It is obvious that it was important for the telephone company to be able to afford its general customers facilities for communicating by telephone with the public offices. That opportunity could not operate otherwise than to render the service it offered in general more valuable than it would otherwise be and so attract customers and greatly extend its sphere of operations. That which it sought to obtain was then a legitimate basis for a contract. It is just as obvious that the service which it offered in return for the privilege sought could not be otherwise than valuable to appellant as a means of expediting the public business. Such privilege may well have been considered so specially valuable to the company as to be a fair equivalent for the free service, so called, that is free as regards appellant rendering any direct pecuniary consideration therefor.

No question is raised, or could well be, but that it was competent for appellant to contract for telephone service. So there is no question of competency in general to be considered. It is argued that no contract was made because the offer of the company was only conditionally accepted by appellant. That, of course, does not cut any figure, since the modified acceptance was submitted to by the company by installing the telephones. As in the case of any municipal privilege granted, no written acceptance was necessary. The actual enjoyment of the privilege granted was as effective to close the contract as a formal written acceptance, in the absence of any written law requiring a different acceptance.

Even in case of a legislative franchise granted upon specified conditions but without providing any manner of acceptance, use of the franchise constitutes an acceptance and creates contractual obligations. *Heath v. Silverthorn L. M. & S. Co.*

39 Wis. 146; *Madison, W. & M. P. Co. v. Reynolds,* 3 Wis. 287.

In a case of this sort parties are competent to contract the same as private persons. An offer on one side may be accepted by unqualified performance on the other, as well as in any other way, in case the offer does not otherwise require. This is so in harmony with the most familiar of elementary principles that nothing further need be said in respect to the matter. The facts show unmistakably that a binding contract was made as appellant claims, unless it is void upon grounds hereafter discussed.

It is suggested that the transaction contemplated treating appellant as a favored customer, contrary to public policy. It is conceded that there was no written law at the time the contract was made prohibiting the company from granting appellant a different rate for service than general customers, but it is insisted the circumstances fall within the common-law rule that a *quasi*-public corporation should afford the service it offers, to every person upon the same basis that it does to any one under the same or similar circumstances; that any substantial departure therefrom is an unjust discrimination and contrary to sound public policy, rendering any contract for such discriminatory service unenforceable by judicial remedies.

The contract in this case having been made before the legislation occurred prohibiting discriminatory rates, such legislation does not cut any figure in the case. If the contract were valid when made it is within the constitutional protection precluding the legislature from impairing the obligations of contracts. Moreover, it is by no means certain but that the special circumstances in this case would, in any event, take the same out of the common-law rule mentioned. We need not go further on this branch of the case than to suggest that it is not every discrimination in the treatment by public-service corporations of their customers which is condemned by the

common law. Only unjust discriminations are so condemned. For special reasons, in the absence of any written law on the subject, such a corporation may make a different rate to one person than to another, or accept pay from one upon a money rate and from another in service of a legitimate character or some other reasonable equivalent, so long as the compensation demanded is within reason under the circumstances. This subject covers a broad field. ⋅ We leave it without stating much more than the rule in general, nothing further being at all necessary to the case in hand..

It should be noted that the legislature in enacting the law of 1907 (Laws of 1907, ch. 499), appreciating there might be contracts existing between public-service corporations and customers, valid in the absence of prohibition by written law, and that it was not within its competency to nullify or impair them, expressly provided at sec. 1797m—91, that:

"The furnishing by any public utility, of any product or service at the rates and upon the terms and conditions provided for in any existing contract executed prior to April 1st, 1907, shall not constitute a discrimination within the meaning specified. . . ."

Sufficient has been said to indicate that the question of whether the contract in question is unenforceable on grounds of public policy must be solved with reference to the condition of things at the time it was made. If public policy sanctioned it then, a change thereof by act of the legislature or otherwise does not affect its validity. Greenhood, Pub. Pol. 5.

Public policy as bearing on the validity, or in other words the judicial enforceability, of contracts, is that principle which maintains that a person cannot rightfully do or bind himself to do that which is inimical to the public good. So where a contractual situation is not found to be clearly within the principle condemning it, it cannot properly be said to be illegitimate merely because there is discrimination. Discriminatory contracts between public utility corporations and their

patrons which are held to be void as inimical to the public good are so held because unreasonable advantage is thereby given to one customer or a class over others, whereas all have a moral and legal right to equality of treatment. In case of the contract being between a private corporation and the state or other public corporation, whatever advantage the particular customer has over general customers, obviously, inures to the benefit of the latter in the aggregate. In other words, in the ultimate there is no discrimination which is inimical to the public good, and hence no violation of public policy. Such is the situation here. If we concede that the appellant under the contract was a favored customer, in that if the same advantages had been granted by contract to a private corporation the agreement would have been unenforceable, still in the circumstances here the contract is enforceable because the advantage is to the public instead of to any particular member thereof.

But it is argued that, conceding there is a contract as claimed by appellant, valid as regards any written or unwritten law, it is unenforceable, so far as executory, because no time is specified with reasonable definiteness for its duration. We assume that point is made relying on the familiar principle governing such cases as *Irish v. Dean,* 39 Wis. 562, and *Coffin v. Landis,* 46 Pa. St. 426, 430. The rule on the subject was stated in *Robson v. Mississippi River L. Co.* 43 Fed. 364, thus:

"When a contract is silent as to the matter of its duration, then it is ordinarily terminable at the pleasure of either party, reasonable notice being given to the other party. When there is nothing in a contract, when applied to its subject matter, which either directly or in fair implication can be considered to fix a limit to its duration, the law infers that the parties intended that such contract is terminable at the option of either party, reasonable notice of the exercise of such option being required, when such notice is needed for the protection of the other party to the contract." 43 Fed. 368.

That docs not mean that a contract for continuous service is fatally indefinite so as to be subject to the option mentioned merely because it does not specify a time, presently definite, for its termination. As said in the case quoted from:

"The duration of a contract may be made dependent upon the expiration of a period of time, or upon the completion of a given undertaking, or the happening of some event, all of which in turn may be certain or uncertain as to the date when the undertaking may be completed, or the event may happen. This uncertainty, however, does not render the contract terminable at will." 43 Fed. 370.

It is conceded that the contract in question, in its letter, fixes a time for its termination, to wit, when the telephone company ceases to "maintain and operate a telephone exchange in said city." But it is argued that the language is ambiguous, because it would be so unreasonable for a telephone company to agree for such a mere privilege as that granted to give service through twelve telephones during the entire period of its existence as an operating company in the grantee city, that it cannot be there was any such mutual intention in this case. For my own part, the proposition thus presented is one of serious difficulty. However, it is the opinion of the court that it may well be the telephone company, under the circumstances, supposed the contract, taking it at its letter, provided for a fair exchange of equivalents. At any rate, in the opinion of the court, there is nothing in the situation presented to indicate that the agreement, taken literally, is so unreasonable as regards its continuance, as to warrant treating the language of the parties in that regard as ambiguous. Therefore, in the opinion of the court, the contract is binding according to its terms.

No question is raised as to whether, in any event, this case, from the showing made in the complaint, falls within some recognized head of equity jurisprudence. Therefore, we take it that the parties considerately waived that question. Hence

this court will not consider it. It follows that the ground upon which the general demurrer to the complaint was sustained and the temporary injunction denied is untenable, and that others, if any there be, are deemed waived.

It is the opinion of the court that the order sustaining the demurrer as regards the improper joinder of actions should be affirmed; that the statutory action created to enable a party aggrieved by an order of the Railroad Commission, by action against such Commission to challenge the validity of such order, is not joinable with another action of primary import against some other party, to prevent the latter from complying with such order; that the statute does not contemplate affording opportunity to compel the Railroad Commission to appear in court as a party defendant and vindicate the validity of its action upon such validity being challenged at the suit of another against a third person, and that to permit such to be done would unduly prejudice administration of the law by such Commission. Sec. 2647, Stats. (1898), on the subject of joinder of actions, it is thought, does not permit the special statutory action against the Commission to be joined with any other.

The point is made that the complaint is demurrable because it is aimed at an order of October 14, 1908, which is based on one of June 12, 1908, in favor of which the limitation of time to question the validity under sec. 1797$m$—65, expired before the action was commenced. It is a sufficient answer thereto that the complaint is silent about any order of June 12, 1908. So far as the pleading shows, the order of October 14, 1908, is wholly an original matter.

From the foregoing it follows that the order appealed from, as regards the temporary injunction and the general demurrer, is reversed, and that as regards improper joinder of causes of action, it is affirmed.

*By the Court.*—So ordered, with costs in favor of appellant against the telephone company and costs in favor of the Railroad Commission against appellant.

The following opinion was filed October 21, 1909:

MARSHALL, J. (*dissenting in part*). It seems proper, though it is unusual, for one, after having written the opinion of the court, with which the writer is in harmony in the main, by an independent opinion to state such individual views as are not in such harmony.   I have taken that method on other occasions and am constrained to follow it as a practice where it can be done without prejudice to vindicating fully the court's judgment of the case.   So much for what may seem somewhat novel in writing at the same time the main and a dissenting opinion, in part, as well.

I will not add here more than a suggestion to what is said in the decision indicating doubt as to whether the contract for maintenance of the telephones indicates with sufficient certainty the time of its termination to take it out of the rule as regards terminability at the option of either party.   Much could be said on that question.   I rather incline to the view that the parties to the contract did not intend that the agreement should be substantially perpetual.

The conclusion of the court that the demurrer for improper joinder of causes of action was well taken, involved a decision that two good causes of action were, in form, stated in the complaint, one against the Railroad Commission to secure judicial condemnation of the order to discontinue the telephone service under the contract upon the ground of such order being unlawful, and one against the telephone company to prevent its terminating such service.   Probably the latter cause of action, had the question been raised properly, would have been hard to maintain in equity in face of the general rule that any party to a contract may breach it and submit to responsibility for damages.   That is subject to exceptions, perhaps, covering cases where the injury is irreparable by an award of damages, but it would be difficult to bring this case within such exception and we pass that.

The cause of action against the Commission is expressly

provided for by ch. 499, Laws of 1907.  The legislative plan is that the validity of any order of the Commission shall only be challenged in an action in which such Commission is a party defendant, commenced in Dane county.  Sec. 1797m—64.  That provides for quite a summary way of testing such a question and was clearly designed to be exclusive, the idea being that business interests should not be prejudiced by long-continued uncertainty as to validity of a Commission regulation, and that in case of such validity being challenged by judicial proceedings to annul it the officials charged with the duty of enforcing it and who originated it should have opportunity to be heard, representing the state.  That such is the scheme written into sec. 1797m—64 and the associate sections is made plain beyond reasonable doubt in the fact that by sec. 1797m—65 a short limitation, upon the right to challenge the validity of a Commission order, is created.  It is there provided, in effect, that unless an action shall be brought in Dane county against the Commission to test the validity of any determination made by it within ninety days after the entry thereof, no question in that regard shall be regarded as open to judicial interference.  All rights in that regard "shall terminate absolutely at the end of ninety days after such entry or rendition" are the unmistakable words of the law.

Pursuant to the statute this action was commenced in Dane county,  It is clear that the dominant purpose was to test the validity of the order requiring discontinuance of the telephone service.  The able lawyer who commenced the action should not be condemned as having made such a blunder as to commence an action seeking to prevent the telephone company from removing its telephones from the city buildings, yet left the order requiring such removal unchallenged, so that, in case of a judgment in plaintiff's favor as to the telephone company, the latter would be immediately brought face to face with a written law, in effect, plainly requiring it to do the very thing it was prohibited from doing by the judgment.

Had the plaintiff not joined the two causes of action, so really dependent upon each other as aforesaid, and made the telephone company alone a party, under competent legal advice, such company would, doubtless, have seasonably moved the court for an order bringing in the Commission, to avoid being ultimately placed in the probable uncomfortable situation of inability to obey the final judgment without violating an unimpeachable order of the Commission, and inability to obey such order without defying the judgment of the court.

Again, in case of the nonjoinder the circuit court would have observed, at once, that it was impossible to deal effectually, fairly, with the relations between the plaintiff and the telephone company, without at the same time passing upon the validity of the Commission's order. So it would have faced a situation unmistakably within the contemplation of the legislature when it incorporated into the Code the direction that "when a complete determination of the controversy cannot be had without the presence of other parties, or any persons not parties to the action have such interests in the subject matter of the controversy as require them to be made parties for their due protection, the court shall order them to be brought in; . . ." Sec. 2610, Stats. (1898).

A failure under such circumstances to observe that very salutary Code provision would, it seems, have been such plainly fatal error as to require a reversal on appeal in case of this court obtaining jurisdiction of the cause, even if the question was not raised by any party to the litigation. *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, 129, 103 N. W. 244; *Washburn v. Lee,* 128 Wis. 312, 320, 107 N. W. 649.

I am unable to see any escape from the foregoing; neither can I see any warrant for holding that in creating the method prescribed in the act of 1907 for challenging the validity of a Commission order by action, the legislature did not intend that all the Code provisions for the orderly and proper conservation of the rights of parties should apply to the statutory

action. On the contrary, it seems the lawmaking power must have had that in contemplation and not have thought to create a system that might cause such a clash of duties as must inevitably sometimes occur under such a practice as the decision in this case lays down. I cannot escape the conclusion that such practice runs directly counter to the plain mandate of the Code, and the familiar principles of equity which such mandate dignified by incorporating them into the written law.

The validity of the contract is germane to the validity of the order, since if the former be valid it is beyond the jurisdiction of the Commission to interfere with its execution, as indicated in the decision of the court. The validity of the order is, for the same reason, germane to the validity of the contract.

So the two matters were joinable upon the most familiar of equitable principles. The Commission was a proper party, since the scheme of the law of 1907 is that it shall represent the state in such a matter, if the dominant purpose of the action were to prevent the telephone company from removing the telephones from the city buildings, and the telephone company was a proper party if the dominant purpose of the action were to nullify the Commission's order, while if the dominant purpose were to deal with the telephone service, as such, then the validity of the contract and of the order were both germane thereto.

Thus in any aspect of the matter, the Commission and the telephone company were properly brought into court in one action to settle all the questions so inseparably dependent upon each other. In no other way could complete or real justice be done to any party to the litigation.

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein." Sec. 2603, Stats. (1898) ; *Gager v. Marsden,* 101 Wis. 598, 607, 77 N. W. 922.

Further discussion does not seem necessary to demonstrate the correctness of my position that, by the plain provisions of the Code, the Commission was not only a proper but was a necessary party to the litigation against the telephone company, and the latter was not only a proper but was a necessary party to the litigation against the former,—and to absolve myself from personal responsibility for upholding the contract and at the same time dismissing the Commission from the suit, so that the telephone company may not be able to enjoy the relief it obtained by the judgment without incurring the severe penalties of the Commission law for violation of its order, which, if not valid at the start, may become so by limitation upon the use of judicial remedies for questioning such validity.

BARNES, J.   I concur in so much of the foregoing dissenting opinion of Mr Justice MARSHALL as holds that the Railroad Commission of Wisconsin was a proper party to the action.

WINSLOW, C. J., took no part.

Motions for a rehearing, made by the *Railroad Commission* and by the *Douglas County Telephone Company,* were denied February 1, 1910.