BRADFORD *v.* CITIZENS' TELEPHONE CO.

TELEGRAPHS AND TELEPHONES—DISCRIMINATION.

A telephone company which renders identical services to all subscribers makes an unlawful discrimination in violation of the provisions of 2 Comp. Laws, § 5270, if it charges new subscribers a higher rate than it charges its old subscribers.

Appeal from Ottawa; Padgham, J. Submitted April 18, 1910. (Docket No. 36.) Decided May 7, 1910.

Bill by Lewis C. Bradford to compel the Citizens' Telephone Company to furnish complainant telephone service. From a decree for complainant, defendant appeals. Affirmed.

*Charles H. McBride* (*Charles R. Wilkes*, of counsel), for complainant.

*W. J. Stuart* (*Kleinhans & Knappen*, of counsel), for defendant.

STONE, J. The bill of complaint in this cause was filed to compel the defendant to furnish the complainants telephonic service through defendant's exchange at the city of Holland at the same price charged to other subscribers at said city. Complainant relies upon the provisions of section 5270, 2 Comp. Laws. This section of the statute provides, among other things, that upon the payment or tender of the usual or customary rental sum:

"It shall be the duty of every telephone company, or person, firm or corporation engaged in the business of leasing telephones to the public, or supplying the public with telephones and telephonic service, or operating a telephone exchange,   *   *   *   to furnish without unreasonable delay, without discrimination, and without any further or additional charge, to the person, firm or corpora-

161 MICH.—25.

tion applying for the same, including all telegraph companies, a telephone, or telephones, with all the proper or necessary wires and fixtures, and the use of such telephones, wires and fixtures, as well as connection with the central office, or telephone exchange, if desired, and shall connect the telephone of such person, firm or corporation, with the telephone of any other person, firm, or corporation having connection with the same, or a connecting exchange or central office, whenever requested so to do, without regard to the character of the message to be transmitted, provided they are not obscene nor profane; and every company, person, firm or corporation neglecting or refusing to comply with any of the provisions of this act shall forfeit all right to transact a telephone business in this State, and may be enjoined therefrom, and from leasing telephones to the public, from supplying the public with telephones and telephonic service, and from operating a telephone exchange, by bill of complaint filed in any court of competent jurisdiction, by any person, firm or corporation, injured, interested, or denied any of the rights herein given."

The bill alleges that the defendant corporation had been guilty of discrimination against complainant, in that it refused to give him telephonic service from its exchange in said city as it did to other residents thereof using the same service, and in the same manner as complainant requested, unless he paid a higher price or rental for such service than was required of the other subscribers.

The facts are not much in dispute. The answer of defendant practically admits the facts as set forth in the bill, but denies that it discriminates against complainant. It appears that in 1898 the defendant purchased the telephone exchange in said city from the Ottawa Telephone Company, and since that time the said telephone exchange has been operated and carried on in said city by the defendant. In the summer of 1907 the defendant installed an automatic telephone exchange, taking out the phones which had been previously used, and replaced them with new phones connected with the automatic system. Upon installing the automatic system aforesaid, the rates charged to all subscribers were fixed at $15 for residences, and

$24 for business places, and contracts for service, for 10 years in some instances, and 5 years in others, were entered into between the defendant and some of its patrons, at these rates, and other contracts for 3 and 2 years were also entered into by the defendant and some of its patrons, at the same rate.   However, on the 1st day of January, 1908, the defendant fixed new rates for all new subscribers at $18 for residences, and at $30 for business places. The new subscribers were to be served with identically the same service, and were to use the same fixtures as the old subscribers.   The phones were placed free to all patrons, whether new or old subscribers.   Upon the hearing, a decree was entered for complainant and defendant appeals.

We quote from the opinion and finding of the learned circuit judge:

"In February, 1908, the complainant applied to defendant company, through its manager, to be supplied with telephonic service at his business place in Holland, and tendered the sum of $24 for a year's service by the automatic system, and offered to enter into a ten-year contract at the same rate, but the defendant company refused to place a phone in complainant's business place for less than $30 per year, because complainant was a new subscriber, and not entitled to the rate granted the old subscribers; that is, those who applied for service before the 1st day of January, 1908.   There was no claim on the part of the company at this time that it would be more expensive to connect complainant's business place with the exchange than any other of its old subscribers, or that the location of complainant made it more expensive or difficult to reach than any of the old subscribers, and no claim, then or now made, that complainant's business place was substantially different than any other place in Holland, but was centrally located, and could easily have been connected with said automatic exchange.   There was nothing shown upon the hearing in this case, or any reason given, for refusing to comply with complainant's request, except that he was a new subscriber, and new subscribers after January 1, 1908, were to be charged $30, instead of $24, for business phones."

There was evidence introduced by the defendant showing the amount invested in said exchange, the increase in telephones, the increased expense of operating the greater number of telephones, and the profits on the investment for the different years, and it argues that the business cannot live at the rates charged, and that the loss is occasioned by the investment for new subscribers, and the increased expense of operating the exchange which they cause; that it is just and reasonable that they should be charged more than old subscribers, and that any discrimination which is just and reasonable in itself is lawful; that by reason of the increased cost, both of investment and service, which they cause, the new subscribers are in a class by themselves. It is also urged that the old subscribers had previously a service that was limited in its numbers and efficiency.

These contentions, in our opinion, are not impressed with merit. These ideas, carried to their full extent, would require every later subscriber to pay more for the same service than his former neighbor subscriber. While it is probably true that the cost of operating a telephone exchange increases with the increased volume of business, it is equally true that the whole body of subscribers, whether new or old, makes the added expense, and reaps the added benefit. A telephone exchange with 1,000 members is manifestly more valuable to every subscriber than one with 100 members, but it is equally valuable to each member in the same class, and its value to the subscriber does not depend, in any degree, upon whether he is a new subscriber or an old one. It is difficult to understand why new subscribers should pay any more for the right to talk to old members than the latter do for the right to talk to new ones. What by way of investment or extension benefits one equally benefits the other. If the defendant is running its business at a loss at the price charged old subscribers, and taking on new subscribers increases the loss, then it may increase its rates, but it should do so without discrimination, and treat alike the

subscribers getting the same class of service. The manager of the defendant testified that he stated to complainant that there was no charge for installation, that the basis of defendant's charge of $30 to complainant was not based on installation expense, but that the sum named was an established rate for new subscribers, and that was the only reason for making that charge. The statute above quoted is but declaratory of the common law, and in addition provides the remedy in case a telephone company attempts to discriminate between subscribers of the same class.

In 27 Am. & Eng. Enc. Law (2d Ed.), at page 1021, it is said:

"Telephone companies, whether corporations or not, are affected with a public interest, and are bound to serve impartially, and without unjust discrimination, all who apply for their service and offer compliance with their reasonable regulations. In many of the States statutes exist which provide for the recognition and enforcement of these obligations, but it seems that these are merely declaratory of the common law on the subject."

See many cases there cited. Counsel upon both sides cite *Western Union Tel. Co.* v. *Call Publishing Co.*, as it appears in 44 Neb. 326 (62 N. W. 506, 27 L. R. A. 622, 48 Am. St. Rep. 729); 58 Neb. 192 (78 N. W. 519), and 181 U. S. 92 (21 Sup. Ct. 561). Counsel for defendant relies upon the following language, taken from the decisions of the United States Supreme Court in said cause:

"There is no cast-iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and, even when based upon difference of service must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination. * * * It is not an undue preference to make to one patron a less rate than to another

when there exist differences in conditions as to the expense or difficulty of the services rendered which fairly justifies such a difference in rates."

The distinction is clearly pointed out in the headnote to the case cited, as follows:

"Where there is dissimilarity in the services rendered by a telegraph company to different persons, a difference in charges is proper."

In the case at bar no such distinction exists or is present. The service to the old and to the new subscriber is identical. The case is readily distinguished from the *Call Case*. We have examined the following cases cited by counsel: *American Waterworks Co.* v. *State*, 46 Neb. 194 (64 N. W. 711, 30 L. R. A. 447, 50 Am. St. Rep. 610); *Richmond Natural Gas Co.* v. *Clawson*, 155 Ind. 659 (58 N. E. 1049, 51 L. R. A. 744); *Snell* v. *Power Co.*, 196 Ill. 626 (63 N. E. 1082, 58 L. R. A. 284, 89 Am. St. Rep. 341); *Griffin* v. *Water Co.*, 122 N. C. 206 (30 S. E. 319, 41 L. R. A. 240). We are of opinion that the defendant in its conduct complained of was guilty of a discrimination against the complainant in violation of the letter and spirit of the statute, and that the circuit judge reached the proper conclusion.

The decree below is affirmed, with costs to complainant.

OSTRANDER, HOOKER, MOORE, and BLAIR, JJ., concurred.