PEOPLE'S TELEPHONE COMPANY, Appellant, vs. LEWIS, Respondent.

*October 9—October 29, 1912.*

*Public utilities: Telephones: Special contract for service: Validity:
Discrimination.*

1. A special contract, executed prior to April 1, 1907, between a
   telephone company and a stockholder therein and embodied in
   the stock certificate issued to him upon his subscription there-
   for and payment of the par value and ten per cent. additional,
   stipulating that he should possess, as owner, one telephone and
   be entitled to the use of the company's lines in common with
   those having rented telephones in the same locality, subject to
   assessments upon the stock sufficient to pay the corporate
   expenses, but not exceeding $10 per year, was valid under
   sec. 1797*m*—91, Stats. (Laws of 1907, ch. 499).
2. In the absence of proof that it is *unreasonably* discriminatory,
   such a contract does not come within the condemnation of the
   common law.
3. Mere difference in method of dealing with customers, some by
   implied agreement to pay at schedule rates, and others by ex-
   press contract, is not discrimination within the meaning of
   sec. 1791*a*, Stats. (1898).

APPEAL from a judgment of the circuit court for Columbia
county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Action to recover for telephone service. The amount
claimed was $1 per month for thirty months. The answer
admitted receiving the service but pleaded a contract, ante-
dating the public utility law, to the effect that the price for
such service should not exceed $10 per year. This was al-
leged: In 1902 defendant subscribed for and became the
owner of one share of the common stock of the defendant of
the par value of $50, paying therefor $55, under an agree-
ment that he should be furnished telephone service for, not
exceeding a charge of $10 per year and that such agreement
was embodied in and became a condition of the certificate of
stock.

The cause was tried by the court.    Facts were found as follows: Plaintiff is a duly organized telephone company under the laws of Wisconsin and has been since August, 1902. During such time defendant has had of plaintiff the use of its telephone service without paying therefor since January 1, 1909.    The service was furnished pursuant to a contract made in August, 1902, and embodied in plaintiff's certificate of corporate stock No. 55, issued to defendant upon his subscription therefor and payment of the par value and ten per cent. additional.    The contract stipulated that the holder of the stock should possess, as owner, one telephone and be entitled to the use of plaintiff's lines, in common with those having rented telephones in the same locality, subject to assessments, ratably, upon all common stock sufficient to pay the corporate expenses; but not exceeding $10 per year.    The amount assessable against the common stock for 1908 was not anything, for 1909 $10, and for 1910 $10.

Upon such facts it was held that the contract relied upon was not contrary to any law existing at the date thereof and was the measure of defendant's liability.    Judgment was rendered accordingly.

*Daniel H. Grady,* for the appellant.

For the respondent there was a brief by *Rogers & Rogers,* and oral argument by *H. B. Rogers.*

MARSHALL, J.    The questions presented in this case are not new.    All of them have been, either directly or substantially, repeatedly decided by this court in opinions in which attempts were made to so fully analyze the public utility law as to relieve administration of it as free from embarrassment as practicable.    *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 122 N. W. 1023; *La Crosse v. La Crosse G. & E. Co.* 145 Wis. 408, 130 N. W. 530; *State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 129 N. W. 600; *Calumet Service Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131.

Very little, if anything, need be added to what is said in the cases referred to as to the questions there discussed. The better way, it seems, as the same questions again happen to be pressed upon our attention, is to treat them as ruled by the previous decisions without additional discussion.

What has been said suggests impropriety of treating the multitude of authorities, foreign and domestic, cited to our attention.

The point that the contract with defendant was discriminatory at common law is met by *Superior v. Douglas Co. Tel. Co., supra,* holding that only unreasonable discriminations are so condemned, and absence of proof that there was any such discrimination in this case.

The suggestion that the special contract with defendant and others of his class is void under sec. 1791*a,* Stats. (1898), requiring every telephone company engaged in the business of furnishing telephone service to do so "without discrimination" is met by the fact that mere difference in method of dealing with customers, some by implied agreement to pay at schedule rates and others by express contract, was not considered by the legislature in passing the public utility law, discrimination within the meaning of sec. 1791*a.* Evidently such section was regarded as a mere incorporation of the common rule into written law, because sec. 1797*m*—91, Stats. (Laws of 1907, ch. 499), specifically recognized the existence of special contracts and provided that "the furnishing by any public utility, of any product or service at the rates and upon the terms and conditions provided for in any existing contract executed prior to April 1; 1907, shall not constitute a discrimination within the meaning specified,"—referring to the provision of the section making any undue or unreasonable preference unlawful. Such section was held, in *Superior v. Douglas Co. Tel. Co., supra,* to have been intended to preserve existing agreements with public utility corporations from being affected by the public utility law, and to be efficient for that purpose as to mere contractual matters such

as ordinarily occur *inter partes.* That was affirmed in *La Crosse v. La Crosse G. & E. Co., supra,* such ordinary contracts as the one in question being distinguished from such as form an element of a corporate franchise, the latter being held superseded by the public utility law, and the former within the limitation mentioned in sec. 1797m—91 and so expressly preserved and recognized as valid.

The foregoing seems to cover everything which needs treatment on this appeal. The case presents the question of whether a mere special contract with a public utility corporation for services, made prior to the time limit mentioned in sec. 1797m—91, one not inhering in a corporate franchise, and so superseded by the public utility law; but, an ordinary agreement for service, recognized as valid and expressly given validity by such section,—can be relied on by one party thereto as binding on the other seeking to repudiate it. No reason is perceived why the answer should not be in the affirmative as it was below.

*By the Court.*—The judgment is affirmed.

BARNES, J., took no part.