MILES, Appellant, vs. PEOPLE's TELEPHONE COMPANY,
Respondent.
SAME, Respondent, vs. SAME, Appellant.

*May 16—June 28, 1917.*

*Telephone companies: Service contract with stockholder: Stock "as-
sessable" for expenses: Amount, how determined: "Deprecia-
tion" charge: Reasonable rules: Deposit in advance: Discon-
tinuance of service: Unlawful discrimination in rates.*

1. A contract, contained in the stock certificates issued by a tele-
phone company, providing that each share of common stock
carries with it the ownership of one telephone and the use of
the company's lines and is "assessable to pay the corporate ex-
pense," not to exceed $10 per year, is construed as binding the
owner of a share of common stock to pay for his telephone serv-
ice an annual charge not exceeding $10, to be arrived at by di-
viding the total cost of such service for that year by the average
number of telephones in use.

2. Such an arrangement being wholly different from anything in
the nature of an assessment upon stock for the payment of an
amount due upon the subscription therefor, statutory provi-
sions relating to assessments are not applicable.

3. In arriving at the cost of service for which the common stock is
assessable under said contract, it is proper to include any sums
that may be applied by actual payment or set aside in a fund
for losses caused by storms or catastrophes and to meet the re-
quirements of industrial insurance, also whatever is paid out
on bonded indebtedness of the company or interest thereon—
guarding against double allowance of any item.

4. It is proper also (especially in view of sec. 1797m—15, Stats.) to
include, as a part of the total cost of each year's service, a rea-
sonable allowance for depreciation; meaning thereby the in-
evitable decrease, year after year, in the value of the plant
owing to ordinary wear and tear, to the influence of the ele-
ments, and to improvements in materials and methods which
lessen the value of the old, and the term covering also the neces-
sity of providing systematically in advance, year by year, the
funds for the change to new materials and methods when the
old become useless or inadequate.

5. A telephone company has an unquestionable right to make rea-
sonable rules and regulations applying to all customers and
persons served alike, for the proper, convenient, and economical
carrying on of its business.

6. The contract above stated did not preclude the telephone com-

pany from reasonably securing payment of the amounts to become due each year for telephone service by a regulation requiring each holder of common stock to deposit $10 in advance to cover his assessment and by providing for discontinuance of the service in case of a default in making such deposit.

7. The difference between the maximum charge of $10 for telephone. service to holders of the common stock and a charge of $12 to others for the same service was not an unlawful discrimination which rendered either of such charges unlawful, nor an undue preference or advantage within the prohibition of sec. 1797m—91, Stats. (Laws 1907, ch. 499), the contract embodied in the stock certificates having been entered into prior to April 1, 1907.

APPEALS from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

The defendant corporation was organized February 4, 1901, and originally incorporated for $20,000, made up of common and preferred stock at the par value of $50 per share, and to each subscriber of either form all stock was issued substantially in the one form of certificate containing the following provisions:

"There shall be paid upon the preferred stock a six per cent. annual cumulative dividend, payable on the first days of January and July of each year. The preferred stock shall be non-assessable. Each share of common stock carries with it the ownership of one good telephone, and the use of not less of the company lines than would be furnished with a rented telephone in the same locality, and may entitle the holder thereof to use any number or all of the company party lines, if the common stockholders so vote at the last annual meeting, subject to restrictions made by the board of directors as to time line may be occupied and proper use of. Company is not liable to additional expense on account of sale of common share by original purchaser. The common stock is assessable to pay the corporate expense of the corporation, provided that the assessment of each share of said stock shall at no time exceed the sum of ten dollars per year."

The plaintiff purchased such stock in January, 1901, paid therefor the sum of $55, and received for use and continued to use for some time thereafter a telephone which was con-

nected with and used with other telephone lines in the system operated and maintained by defendant. Defendant at the time of its organization took over a telephone system theretofore owned by one Farrington, who became president of defendant and continued to be such thereafter. Plaintiff had been a subscriber to the former system and had paid for the use of such telephone over substantially the same lines about $12 per annum.

For some time after 1901 the plaintiff paid, upon request of the defendant, rates for the use of such telephone from $4 to about $9 per annum and never in excess of $10 in any one year. Subscribers for telephone service other than such holders of common stock were required to pay at rates in the neighborhood of $12 per annum per telephone for the same kind of telephones and telephone service as that furnished the plaintiff.

In 1907, on the suggestion of the railroad commission that such difference in charges for substantially the same services was in the nature of an unlawful discrimination, the defendant undertook to require the plaintiff to pay for his telephone service at the same rate as was being paid by the other telephone users. Such payment having been refused by plaintiff and several other holders of common stock, actions were brought by the defendant against the plaintiff and one Lewis for two years of such service respectively, and in the trial of said actions it was held by the trial court that the contract embodied in the certificate above quoted, the same having been entered into prior to the passage of the law creating the railroad commission, was valid and binding between the parties and authorized the allowance to a person situated as was plaintiff a difference in the rate to be charged for the same services; and upon appeal to this court such holding was affirmed. *People's Tel. Co. v. Lewis,* 151 Wis. 75, 138 N. W. 100.

For the year 1914 the defendant company made what it

called an assessment against the plaintiff, under its construction of the contract embodied in the stock certificate, for the use of such telephone and service to the amount of $10; and in arriving at such assessment it computed the entire cost of such service and divided such cost by the average number of telephones in service during such year. In computing such cost it included an item for depreciation in the value of its equipment and also included interest paid by it on its outstanding bonds. Plaintiff refused to pay such sum of $10; and on April 15, 1915, the defendant gave notice to the plaintiff that owing to the trouble it had in collecting assessments from certain holders of such common stock it would not furnish service to holders of common stock whose assessments were in arrears after May 15, 1915, except in cases where such parties would make a deposit of $10 with the company to guarantee payment of the assessment, and that upon the using up of such deposit in the payment of assessments a new deposit was to be made, and in default of making any such deposit service would be discontinued within thirty days after notice. The plaintiff refusing to make such deposit, the defendant disconnected plaintiff's wires and refused to continue service. Thereupon plaintiff commenced this action to require the defendant to restore and re-establish connection as before and for damages against the defendant on account of his loss of such service by reason of the disconnection.

The court made its findings of fact and conclusions of law, the material parts of the conclusions of law being as follows: First, that the assessments of common stock are not payable until the end of the current year and that defendant has no right to disconnect the telephone for failure to pay such assessments, but is limited to the ordinary remedies for collecting debts. Second, that defendant has no right to require the deposit of $10 in advance and that it has no right to disconnect the telephones for refusal to make such deposit,

and that such disconnection in plaintiff's case was illegal. .Third, that the true basis of assessments under the contract between the parties is the cost to the defendant of the service to common stockholders, and that such cost should be made by dividing the total expense of maintenance by the total number of telephones, and that no sum should be included for depreciation. Fourth, that in such total expense it is proper to include such sums as are paid into funds actually created and set aside to pay losses from storms, and industrial insurance, provided that when such funds are disbursed such disbursements shall not be included in the expenses in making the assessment for the year in which they are made. Fifth, that it is proper to include in such total payment any bonds and interest thereon. Sixth, that the assessments for the years 1914 and 1915 were void for inclusion in the total corporate expense amounts for depreciation. Seventh, that the plaintiff is entitled to judgment declaring the meaning of the contract to be as so stated, and declaring the 1914 and 1915 assessments void; and enjoining the defendant from attempting to collect said assessments, but not from collecting reassessments for said years made according to the construction of said contract declared in said findings; enjoining the defendant from thereafter disconnecting plaintiff's telephone as a means of enforcing its demands, or from attempting to enforce them otherwise than by the ordinary remedies; enjoining the defendant from assessing plaintiff's common stock in the future for corporate expenses otherwise than according to the construction as in said findings declared; and for recovery from the defendant corporation of $18 damages on account of plaintiff being deprived of the use of his telephone for a period of thirteen months, and for his costs and disbursements.

Both plaintiff and defendant excepted to certain portions of said judgment, and upon such exceptions took cross-appeals to this court.

For the plaintiff there was a brief by *Brossard & Zeidler* of Columbus, and oral argument by *E. E. Brossard.*

For the defendant there was· a brief by *Doerfler, Green & Bender* and *Thomas H. Sanderson,* all of Milwaukee, and oral argument by *Walter H. Bender.*

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee, attorneys for Wisconsin Telephone Company, *amicus curiæ.*

Eschweiler, J.   Construing the contract evidenced in the stock certificate quoted above by the language used and the circumstances surrounding the transactions between these parties, there is no difficulty in arriving at the conclusion that the trial court was right in its finding that the plaintiff was bound to pay for the use of his telephone and the telephone connection furnished by defendant such sum per annum not exceeding $10 as should be arrived at by dividing the total cost of such service by the average number of telephones in use.   Such an arrangement is totally different from anything in the nature of an assessment upon stock for payment of unpaid amounts due upon subscription and therefore statutory provisions with reference to assessments have no applicability to the provisions of the contract here in question.

To permit the contract in question here to be construed as contended for by plaintiff, namely, that he and other holders of common stock were to receive from defendant that which it is evident from the record was reasonably worth anywhere from $6 to $12 per annum upon stock of the par value of not to exceed $55, would be in effect to make that which is designated common stock in reality preferred, and that which is designated preferred stock to be in reality secondary, both so far as priority of participation in profits is concerned and in amount of such sharing, and would be to

do violence to the language as well as to the essence of the contract.

In arriving at such cost it is proper to include, as was done by the trial court, any sums that may be applied by actual payment or set aside in a fund for losses caused by storms or catastrophes and to meet the requirements of industrial insurance, guarding, of course, against any duplication that might arise from the payment in one year out of such funds of sums for which credit had been given, when paid into such fund some prior year.

There may also be properly included whatever was paid out on any of the bonded indebtedness of defendant, or interest thereon, guarding here also, as in the preceding item, against any double allowance through any possible crediting once when set aside as a fund and thereafter as a payment.

The trial court held that there could not be considered, in arriving at such total cost, any allowance for what is called depreciation.

By depreciation is meant that inevitable decrease, year after year, in the value of any such industrial plant owing to ordinary wear and tear, to the influence of the elements, and to improvements in materials and methods which thereby lessen the value of the old. The term also covers the necessity of providing, in a systematic way, the funds in advance and year by year for the change to the new material or method when the old material and methods become useless or inadequate. We think this view of the trial court was error, and that the better rule is to hold that a reasonable allowance from year to year for such depreciation can properly be considered as an element of the total cost for each year's service. This is the view adopted in other jurisdictions. *Knoxville v. Knoxville W. Co.* 212 U. S. 1, 10, 29 Sup. Ct. 148; *People ex rel. Binghamton L., H. & P. Co. v. Stevens,* 203 N. Y. 7, 22, 96 N. E. 114.

The necessity for some such allowance is recognized as a

matter of common, present-day knowledge. *Von Baumbach v. Sargent L. Co.* 242 U. S. 503, 37 Sup. Ct. 201.

It is recognized in this state as a matter of public policy, for the legislature has provided that a charge over and above the expense of maintenance in such a sum as is required to keep property of a public utility in a state of efficiency corresponding to the progress of the industry, is proper, and has designated such charge as depreciation. Sec. 1797*m*—15, Stats.

The defendant has an unquestionable right to make reasonable rules and regulations applying to all customers and persons served alike, for the proper, convenient, and economical carrying on of its business. *Shepard v. Milwaukee G. L. Co.* 6 Wis. 539; *State v. Kenosha Home Tel. Co.* 158 Wis. 371, 148 N. W. 877; *Southwestern Tel. & Tel. Co. v. Danaher,* 238 U. S. 482, 35 Sup. Ct. 886; *Irvin v. Rushville C. Tel. Co.* 161 Ind. 524, 69 N. E. 258; *Buffalo Co. Tel. Co. v. Turner,* 82 Neb. 841, 118 N. W. 1064, 19 L. R. A. N. s. 693; *Woodley v. Carolina Tel. & Tel. Co.* 163 N. C. 284, 79 S. E. 598, Ann. Cas. 1914D, 116; *Young v. Batesville Tel. Co.* 81 Ark. 486, 99 S. W. 679; *Malochee v. Great Southern Tel. & Tel. Co.* 49 La. Ann. 1690, 22 South. 922.

It may therefore elect to do business on a cash or a credit basis, and when we consider the smallness of the amount to be collected from individual users and the great expense that would be entailed in pursuing the usual legal procedure in contract actions thereon, it cannot well do business on a cash basis other than by adopting some such regulation as the one here in question. As it may well refuse on its part to do business with those who refuse on their part to abide by such regulations in the first instance, so it may, under reasonable conditions, enforce its rights by providing, especially where there has been a refusal to pay the then existing charges, as was done in this case, that to all who refuse to give such security service will be discontinued.

It being, therefore, authorized to make such terms and

conditions a prerequisite to service, the trial court erred in holding that the discontinuance of the service was unlawful and in awarding damages to the plaintiff for the period for which his service was discontinued.

That the difference between the $12 rate charged to subscribers and users of telephone service other than those holding common stock and the maximum charge therefor of $10 for the same service to holders of such stock is not an unlawful discrimination so as to make either of such charges unlawful nor within sec. 1797m—91, Stats., prohibiting the giving of any undue or unreasonable preference or advantage or subjecting any one to any undue or unreasonable prejudice or disadvantage, is settled law. *People's Tel. Co. v. Lewis,* 151 Wis. 75, 138 N. W. 100; *New York Tel. Co. v. Siegel-Cooper Co.* 202 N. Y. 502, 96 N. E. 109. It does not come within the situation disposed of in the case of *Bradford v. Citizens Tel. Co.* 161 Mich. 385, 126 N. W. 444, where different rates were charged to persons who were standing each in exactly the same contract relationship with the defendant in that case.

It follows therefrom that the plaintiff under the contract between the parties can be required to pay for the use of telephone service an annual charge to be determined as above indicated; that a reasonable allowance for depreciation may be considered in arriving at the total cost of the expense of such service; that sums paid or set aside for losses caused by storms or catastrophes and for industrial insurance and for principal or interest of bonded indebtedness may also be so included; that defendant may make reasonable requirements to secure the payment of the amounts due it for such service by requiring a deposit for the same and providing for a discontinuance of service if such conditions are not met; that the plaintiff having been rightfully deprived of service on account of his own default, he has suffered no legal

damages by reason of such discontinuance; and that the action should be dismissed with costs.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment in accordance with this opinion, with costs to defendant.