CITY OF MILWAUKEE, Appellant, vs. RAILROAD COMMISSION, Respondent.

*January 9—February 5, 1935.*

*Max Raskin,* city attorney of Milwaukee, and *Alfred R. Gandrey* and *H. A. Kovenock,* assistant city attorneys, for the appellant.

For the respondent there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, attorneys, and *Kenneth E. Higby* of Ripon, special counsel, and oral argument by *Mr. Higby.*

ROSENBERRY, C. J.   While a good deal of forensic fencing has been indulged in by the parties to this litigation, the substantial question raised as appears by the pleadings and briefs of counsel submitted here is the proper interpretation of a part of ch. 499, Laws of 1907 (sec. 1797*m*—91, Stats. 1911) now sec. 196.62, Stats.   The section in question provides:

"The furnishing by any public utility, of any product or service at the rates and upon the terms and conditions provided for in any existing contract executed prior to April 1, 1907, shall not constitute a discrimination within the meaning specified."

It is contended by the defendant that it has no jurisdiction over rates fixed by service contracts of public utilities entered into prior to April 1, 1907, for the reason that the act creating the Railroad Commission delegated no such power to the commission.   That section first came before this court for consideration in *Superior v. Douglas County Telephone Co.* 141 Wis. 363, 122 N. W. 1023.   From the complaint it appears that the city and the telephone company entered into a contract by which the telephone company was to install certain telephones for the purpose of increasing the scope of its service.   The contract was entered into in May, 1904, and on October 14, 1908, the Railroad Commission ordered the company to disregard the contract and to discontinue further performance.   Pursuant to that order the telephone company notified the city that it would cease performance.   The city sought to enjoin the telephone company from removing the service, and, from the order denying a temporary injunction and sustaining a demurrer to the complaint, the city appealed.

The ground upon which the contract was attacked was that it was discriminatory, and it was held by this court that, the contract having been made before legislation prohibiting discriminatory rates was enacted, it was not subject to attack, and sec. 1797m—91 was referred to and quoted. It is to be noted that this case dealt only with the matter of discrimination. No specific rate was provided for in the contract, but the city was served in consideration of certain rights and privileges granted to the telephone company, so the matter of whether or not the contract was subject to attack because of unreasonableness of the rate was not before the court and was not considered.

· The matter was next given special consideration in *People's Telephone Co. v. Lewis,* 151 Wis. 75, 138 N. W. 100. That was an action to collect telephone rentals. The defense was that the service was rendered under a contract antedating the public utility law in which the company agreed to furnish the service at a lower rate. The court said:

"The point that the contract with defendant was discriminatory at common law is met by *Superior v. Douglas County Telephone Co., supra,* holding that only unreasonable discriminations are so condemned, and absence of proof that there was any such discrimination in this case.

"The suggestion that the special contract with defendant and others of his class is void under sec. 1791*a*, Stats. (1898) requiring every telephone company engaged in the business of furnishing telephone service to do so 'without discrimination' is met by the fact that mere difference in method of dealing with customers, some by implied agreement to pay at schedule rates and others by express contract, was not considered by the legislature in passing the public utility law, discrimination within the meaning of sec. 1791*a*. Evidently such section was regarded as a mere incorporation of the common rule into written law, because sec. 1797*m*—91, Stats. (Laws of 1907, ch. 499), specifically recognized the existence of special contracts and provided that 'the furnishing by

any public utility, of any product or service at the rates and upon the terms and conditions provided for in any existing contract executed prior to April 1, 1907, shall not constitute a discrimination within the meaning specified,'—referring to the provision of the section making any undue or unreasonable preference unlawful."

Other cases bearing indirectly upon the question but not dealing with the statute under consideration here are cited in this case. In this case, as in the *Superior Case,* the court dealt with nothing but a matter of discrimination. While there is language in the *Superior Case,* in the *People's Telephone Co. Case,* and in the intervening cases cited in the *People's Telephone Co. Case* broad enough to warrant the deduction that the court was of the view that such contracts as were being considered by the court were saved not only by the exception relating to contracts made prior to April 1, 1907, but also by the provision of the state and federal constitutions forbidding the enactment of a law impairing the obligation of a contract, the decision in each case went upon the statutory exception. For instance, in *La Crosse v. La Crosse Gas & Electric Co.* 145 Wis. 408, 130 N. W. 530, it is said:

"Moreover, it was of the species of private contracts expressly exempted from disturbance by sec. *1797m—91,* Stats. (Laws of 1907, ch. 499), of the public utility law."

In *People's Telephone Co. Case, supra,* it was said:

"Such section was . . . intended to preserve existing agreements with public utility corporations from being affected by the public utility law, and to be efficient for that purpose as to mere contractual matters such as ordinarily occur *inter partes.*"

See also *Kenosha v. Kenosha Home T. Co.* 149 Wis. 338, 135 N. W. 848; *Manitowoc v. Manitowoc & Northern T. Co.* 145 Wis. 13, 129 N. W. 925; *Kilbourn City v. Southern Wis. Power Co.* 149 Wis. 168, 135 N. W. 499.

Ch. 499, Laws of 1907, ordinarily known as the public utility law, provided by sec. *1797m—3,* Stats. 1911, that

every charge made by a public utility as therein defined for service rendered "shall be reasonable and just."

Sec. 1797m—89 provided:

"If any public utility or any agent or officer thereof . . . shall, directly or indirectly, by any device whatsoever or otherwise, charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it" than that charged to others, shall be guilty of unjust discrimination.

A consideration of the section under consideration here and the whole law of which it was and is a part makes clear that the act requires all rates charged to be reasonable and just and prohibits discrimination in rates as defined in the act. Therefore, when by sec. 1797m—91' it was declared that any product or service furnished at a rate provided by any existing contract executed prior to April 1, 1907, should not constitute a discrimination, it was intended to leave in full force and effect that provision of the act which requires all rates to be just and reasonable. A rate though "reasonable" may nevertheless be discriminatory. *Homestead Co. v. Des Moines Electric Co.* (C. C. A.) 248 Fed. 439, 12 A. L. R. 390, at 397, and cases cited.

The first time the question of whether or not a contract antedating the enactment of a law governing rates was subject to attack on the ground that the contract rate was unreasonable came before the court was in *Minneapolis, St. P. & S. S. M. R. Co. v. Menasha W. W. Co.* 159 Wis. 130, 150 N. W. 411. This was an action to recover freight charges on a carload shipment of logs. The logs were shipped under a contract which provided for a rate of $3 per car as modified. The contract was made December 15, 1899. On February 27, 1911, the railway carrier notified the defendant that it would thereafter charge in accordance with the tariffs filed with the Railroad Commission; the tariff rate being higher than the contract rate. The point at issue in the case is whether or not the contract rate or the tariff rate prevailed. This squarely

presented the question of whether or not the contract rate of a public utility—in this case a railway—was subject to public regulation. While the Railroad Commission Act contained no exception such as was contained in the Public Utility Act, the claim was made on behalf of the defendant that it was protected by the provision of the constitution which prohibits impairing the obligation of a contract. The court went out of its way to point out that in the cases theretofore considered, including the *Superior Case,* the exemption was due to the provisions of the Public Utility Act itself. The court expressly disaffirmed the contention that utility contracts were saved by the constitutional provision so far as reasonableness of rates is concerned and said:

> "In so far as there is language in that opinion [*Superior Case*] to the effect that a contract for a public utility rate made prior to the passage of the public utility law would be saved by the constitutional prohibition against laws impairing the obligations of contracts, irrespective of the exempting part of the law referred to [the provision here under consideration], it is disapproved."

It is considered that no definitive interpretation of the provision here under consideration was made by the court, which concludes us from now determining whether or not a contract for public utility service made prior to April 1, 1907, is subject to revision by the Railroad Commission (now Public Service Commission) on the ground that the rate prescribed by the contract is an unreasonable rate. We cannot escape the conclusion that had the legislature intended by the provision here under consideration to exempt contracts made prior to April 1, 1907, from the public utility law with respect to reasonableness of the rate, it would have so provided when it relieved them from the provisions of the law relating to discrimination. The two things were squarely in the legislative mind. It chose to exempt contracts as to one and not exempt them as to the other. Therefore no exemption applies as to

reasonableness of rate, and the so-called contract rate between the city of Milwaukee and the city of West Allis is subject to the provisions of the public utility law, and the Railroad Commission and the trial court were in error in holding otherwise. Upon application to fix the rate, the Railroad Commission should have fixed all the rates charged by the city of Milwaukee for service rendered in furnishing water, including contract rates. It declined to interfere with the contract rates upon the ground that it was of the opinion that, under the provision of the statute under consideration here, it had no jurisdiction to do so. While the question presented by this record is whether or not the Railroad Commission had power in 1929 to amend its order of 1926, a determination of the question already decided is necessary to a determination of the matter presented by the record. Whether or not the contract rate was affected by the order involved in this case will be considered in the companion case, *Milwaukee v. West Allis, post,* p. 614, 258 N. W. 851, 259 N. W. 724, where the question is raised more directly than in this case.

Nor do we think the order in this case can be sustained upon the ground upon which the trial court sustained it. While no doubt it has power to determine that the contract rate and a reasonable rate are one and the same, it has never made such a determination nor attempted to do so. The Railroad Commission has studiously avoided consideration of the reasonableness of the contract rate because it was of the opinion that it had no jurisdiction to interfere with it. However, the order of 1929 was a valid order so far as it determined that contract rates were not covered by the 1926 order. While the conclusion reached was based on an untenable premise, it was proper on other grounds and for other reasons.

*By the Court.*—The order of the circuit court sustaining the demurrer is affirmed.